IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

ARON FLINT,

OPINION AND ORDER

         Plaintiff,

19-cv-1000-bbc

   v.

ANDREW SAUL, COMMISSIONER
OF SOCIAL SECURITY,

         Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Plaintiff Aron Flint filed applications with the Social Security Administration for an award of disability insurance benefits and supplemental security income on February 19, 2016, saying that he has been disabled since February 1, 2016.  After his claims were denied initially and on reconsideration, he asked for and was granted a hearing before an administrative law judge, which was held on November 30, 2018.  The presiding ALJ later filed a written opinion in which she concluded that although plaintiff was limited in what he could do, he was capable of performing a restricted range of light work and was therefore not disabled.

Plaintiff asked the commissioner for a review of the decision, but his request was denied, which meant that the ALJ's decision was treated as the final decision of the commissioner.   Plaintiff then appealed to federal court. He contends that the ALJ failed to comply with SSR 96-8p in assessing plaintiff's residual functional capacity and did not

properly evaluatd the medical opinions reached by psychiatrist Dusten Dippen, M.D., psychologist Becca Greub, Ph.D., and treating physician Evan Sandok.

For the reasons that follow, I find that the ALJ's assessment of plaintiff's RFC is supported by substantial evidence, specifically the opinions of state-agency psychologists Hermanta Surath, M.D., Ellen Rozenfeld, Psy.D., and Richard J. Hamersma, Ph.D., as well as by necrologist Evan Sandok, M.D.  I find also that the ALJ did not err in declining to give weight to the opinions of Drs. Dippen and Greub.  Accordingly, plaintiff's motion for summary judgment will be denied.

BACKGROUND

Plaintiff Aron Flint was born on September 28, 1977 and was 38 years old on his alleged date of disability, which meant that he was considered a younger individual, age 18-49.  AR 24.  He has a limited education and worked in the past as a construction worker II, heavy equipment operator and material handler.  AR 24.  The vocational expert who testified at plaintiff's administrative hearing, Thomas Gusloff, found that plaintiff could no longer perform his past relevant work because the demands of that work exceeded his residual functional capacity, but that he was not precluded from working altogether.  Id.  Gusloff concluded that a person of plaintiff's age, education, work experience and residual functional capacity would be able to perform the requirements of representative light, unskilled occupations that required specific vocational preparation (SVP-2) and that such jobs exist in the national economy.  Id.  Sample jobs included cleaner/housekeeper, marker, and

inserting machine operator.   The first two categories encompassed 200,000 jobs; the third category was smaller, but still amounted to 30,000 jobs.

The ALJ concluded that plaintiff had not been under a disability from February 1, 2016, the day he applied for social security and disability benefits, through the date of the ALJ's decision.  AR 25.  She found that plaintiff had met the insured status requirements of the Social Security Act though September 30, 2019; he had not engaged in any substantial gainful activity since his alleged onset date; and he had the severe impairments of seizure disorder, polysubstance abuse, depression, anxiety and degenerative joint disease of the shoulders.  AR 15.  Reviewing the relevant listed impairments, the ALJ found that plaintiff was able to perform fine and gross movements effectively and thus did not meet Listing 1.02(B).  AR 16.  He did not meet Listing 11.02 for epilepsy because he did not have the seizures specified in the Listing and he did not meet Listings 12.04 or 12.06 because his mental impairments did not result in at least one extreme or two marked limitations in a broad area of functioning.  AR 17-18.

Finally, plaintiff did not satisfy Listings 12.04 or 12.06, relating to mental illness. AR 18.   Although plaintiff has received some mental health counseling and has been prescribed psychotropic medication, he did not evidence a minimal capacity to adapt to changes in the environment or to demands that were not already part of his daily life.  The ALJ also found that in the areas of understanding, remembering or applying information and in adapting or managing oneself, plaintiff had only mild limitations; in interacting with others and in concentrating, persisting or maintaining pace, he had only moderate

3

limitations. AR 17-18.  Plaintiff had testified at his hearing to having difficulty remembering things at times, but at his consultative hearing, he was able to remember recent and remote events, although he had forgotten some parts of his childhood.  AR 17.  The ALJ concluded that plaintiff did not have an impairment that met or medically equaled the severity of a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).  Id.

Reviewing the opinions of the state agency medical consultants, the ALJ gave weight to those of Dr. Hemanthat Surath, M.D. and Richard J. Hamersma.  The ALJ also gave weight to the opinion of treating physician Evan Sandok, M.D.  She gave no weight to the opinions of Dr. Dippen or Dr. Greub.

The ALJ concluded that plaintiff had the residual functional capacity to perform light work.  He could occasionally climb ramps and stairs but never ladders, ropes, or scaffolds; he could occasionally balance, stoop, kneel, crouch, and crawl, frequently reach in all directions, including overhead, with both extremities.  AR 18-19.  In addition, he could perform simple routine tasks requiring no more than short simple instructions and simple work-related decision making, with few work place changes and maintain occasional contact with the general public of a brief, superficial and incidental nature and occasional interaction with supervisors and co-workers.  AR 18.

OPINION

For a Social Security claimant such as plaintiff to establish that he is disabled, he

4

must demonstrate that "he has a medically determinable physical or mental impairment, expected to last at least 12 months or result in death that renders him unable to engage in substantial gainful activity." 42 U.S.C. § 423(d)(1)(A) and (2)(A).   The determination of disability is a five-step inquiry.   In the first four steps, the plaintiff bears the burden of proving that he has functional limitations caused by his impairments and that these impairments do not allow him to perform his past relevant work.   20 C.F.R. § 404.1520(a)(4)(i)-(iv).  It is only at the fifth step that the burden shifts to the commissioner to prove "that in light of the claimant's age, education, job experienced and [previously determined] functional capacity to work, the claimant is capable of performing other work and that such work exists in the national economy." Henderson ex rel. Henderson v. Apfel, 179 F.3d 507, 512 n.3 (7th Cir. 1999).

Plaintiff contends that the ALJ erred in two respects when she denied his claim for benefits.   First, she failed to comply with regulation SSR-96-8p in assessing plaintiff's residual functional capacity, specifically as it related to his reaching ability.   Also, her assessment lacked any rationale for her conclusion and did not identify any supporting evidence.  Second, the ALJ failed to accord adequate weight to the opinions of Drs. Sandok and Dippen and consultative examiner Becca Greub, Ph.D., as required under 20 C.F.R. § 404.1527.

## A. ALJ's Failure to Comply with Regulation SSR-96-8p

According to plaintiff, SSR-96-8p requires the ALJ to cite medical opinions to support

any opinion she reaches, but she did not do so in this case.  Instead, plaintiff says, she simply concluded that plaintiff would be able to handle the required reaching in the jobs the vocational expert had identified, without explaining what medical evidence supported her conclusion.  The fact is that the ALJ had no reason to discuss the issue of plaintiff's ability to reach, because plaintiff did not produce any evidence of a medically determinable severe impairment that might have prevented him from doing so.  The record shows no diagnostic studies of his shoulder or recent treatment for the shoulder.  AR 21.

A claimant who cannot show that he has a medically determinable severe impairment preventing him from working is not eligible for benefits under the Social Security Act. Bowen v. Yucker, 482 U.S. 137, 146 (1987).  The Secretary of Health and Human Services "has express authority to place the burden of showing a medically determinable impairment on the claimant."  Id.

The only recent report of plaintiff's alleged reaching limitation was his own testimony at his hearing before the ALJ, when he said that he had problems with lifting and reaching and could lift his right arm no higher than 90 degrees.  He did not cite any medical evidence to support this testimony, but relied entirely on his own assertions about what he could or not do.

The ALJ observed that plaintiff "did not have many complaints of shoulder problems during the period in consideration."  AR 20.  In October 2015, plaintiff had a physical examination by a nurse practitioner, Nicholas Franssen, who reported that plaintiff's range of motion and strength were within normal limits.  AR 324-27.  In March 2016, when

plaintiff met with Dr. Lee Anderson to establish primary care, he told the doctor that he had chronic pain in his knees, hips, shoulders and back, AR 492, but he said nothing about having difficulty reaching. AR 492-94. When he saw Dr. Anderson again in August 2016, the doctor reported that plaintiff's neck was supple on examination and did not mention any muscular-skeletal problems. AR 642.

The ALJ took into account the evidence related to lifting or reaching from the reviewing physicians working for the Social Security Administration. For example, Dr. Hemantha Surath, M.D., found from her review of the medical records that plaintiff had normal range of motion, normal muscle strength and strength in all extremities, including his back. AR 124. Although he "had some limitations in [his] ability to perform work related activities," his condition was not severe enough to keep him from working. Id.

Richard J. Hamersma, Ph.D., reviewed plaintiff's record, finding that plaintiff's listing of limitations exceeded any mental health problems supportable by objective findings. AR 120. He found that plaintiff's mental health impairment was severe but that it did not impose more than moderate limitations. Id.

None of the reviewing doctors found that plaintiff had physical problems that would prevent him from working. With no medical evidence to support the claim that plaintiff was limited in the reaching he could do, it was reasonable for the ALJ to rely on Dr. Surath's opinion that he was not limited in that respect.

7

B.  Failure to Accord Adequate Weight to the Opinion of Plaintiff's Treating Physicians

Plaintiff contends that the ALJ erred in not taking into consideration evidence from psychiatrist Dustin Hippen, Dr. Becca Greub and neurologist Dr. Evan Sandok.

1. Psychiatrist Dustin Dippen

Plaintiff says that the ALJ failed to comply with 20 C.F.R. § 404.1257 when she did not accord adequate weight to the opinion of Dr. Dippen.  The record discloses no report from the doctor other than a three-page form he filled out on November 15, 2018, with checkmarks indicating that plaintiff has all four of the "patient signs and symptoms" listed on the form.  AR 862.  According to the checkmarks, plaintiff had extreme restrictions in both activities of "daily living" and "difficulty in maintaining social functioning," as well as "deficiencies of concentration, persistence and pace," "repeated episodes of deterioration or decompensation in work or work-like settings."  AR 863.  In "work limitations related to psychiatric state," however, the doctor found plaintiff only "moderately impaired" or "not significantly impaired," with just one instance in which he would be markedly impaired:  the ability to interact appropriately with the general public.  AR 964.  The doctor also indicated that plaintiff would miss 4 or more days of work per month because of his condition.  Id. The report did not include any explanation of the findings.

The ALJ gave no weight to Dr. Dippen's three-page checklist because she found that it was based only on plaintiff's subjective complaints, with no objective clinical or laboratory findings in support.  AR 23.  She did not accept the doctor's statements about plaintiff's

8

being disabled or unable to perform a past job; in her view, those statements were properly administrative findings reserved for the commissioner. AR 23. Plaintiff has shown no reason to conclude that the ALJ erred in not placing any weight on the doctor's checklist opinion.

2. <u>Dr. Becca Greub, Ph.D.</u>

The ALJ discounted the opinion of Dr. Greub, a consultative examiner who evaluated plaintiff's work capacity. Dr. Greub found that plaintiff would have some difficulty understanding, remembering and carrying out even simple instructions and would also have difficulty maintaining work pace and withstanding work stresses or adapting to change. The ALJ did not agree with these findings. She found that they were based on plaintiff's subjective complaints; Dr. Greub had seen plaintiff only once; and her opinion was not supported by other evidence in the record. AR 23. Plaintiff contends that the ALJ's finding was erroneous; although Dr. Greub saw plaintiff only once, she said in her report that she had seen "a Telehealth clinic note by primary care from Marshfield Clinic dated 03/15/2016 by Evan K. Sandock M.D." Dkt. #8 at 10. Plaintiff says that this means that Dr. Greub was supplied all of plaintiff's medical records; therefore it was error for the ALJ to say that the doctor's opinion was based only on plaintiff's statements. The assertion does not stand up. Even assuming that Dr. Greub did see the March 15, 2016 note from the Telehealth clinic, there is no evidence in the record that she read it or, if she did, that it contained any relevant information.

3. <u>Dr. Evan Sandok, M.D.</u>

On January 19, 2016, Dr. Sandok, a neurologist, wrote a letter "To Whom It May Concern," saying that he had seen plaintiff the day before and that plaintiff had a long history of intractable epilepsy with seizures.  AR 685.  The doctor added that plaintiff should not drive and would not be able to work at heights or operate dangerous machinery.  He added that his recommendation might change with the adjustments he had made in plaintiff's medication regime.  <u>Id</u>.

At an appointment with plaintiff on March 15, 2016, Dr. Sandok observed that in the past, plaintiff had told doctors that he was free from epileptic seizures but that now seemed to be untrue and that plaintiff had never been seizure-free.  AR 347.  Dr. Sandok also noted that plaintiff had decreased the amount of seizure medication he was taking because he did not have enough money to buy the full amount.  <u>Id</u>.  The doctor's diagnosis was that plaintiff had epilepsy, as well as severe anxiety and depression.  <u>Id</u>.

In October 2016, plaintiff told Dr. Sandok he was having three seizures a month, at least two of which were at night.  AR 619.  The doctor talked with him at length about the medications he should be taking and the need to keep track of his seizures.  He worked with plaintiff to determine the medications that would be most effective in preventing the seizures, AR 349, and he urged plaintiff to call the clinic whenever he had a seizure and to increase his visits to the clinic to once every three months.  <u>Id</u>.  Plaintiff did not report any neurological complaints in June 2016, AR 477, or in August 2016.  AR 469-71.  On July 3, 2018, he told Dr. Sandok he had had no seizures for three weeks.  AR 860-61.

Plaintiff contends that the ALJ failed to properly interpret Dr. Sandok's letter about plaintiff's epilepsy, which the doctor called "intractable" in 2016, that is, "not easily governed, managed, or directed; or not easily relieved or cured." Without knowing what Dr. Sandok meant when he made this statement, it is difficult to know whether he meant that nothing could be done about plaintiff's epilepsy, or whether he meant simply that the condition could never be controlled completely, even with proper medication and attention. Dr. Sandok's records show that it is often plaintiff's failure to comply with his doctor's advice that makes the advice ineffective.

Plaintiff seems to think that the intractability of his epilepsy shows that he qualifies for disability benefits, but he has not shown that his epilepsy cannot be managed or that it would keep him from performing the kinds of jobs that the vocational expert has said he is capable of doing.

ORDER

IT IS ORDERED that plaintiff Aron Flint's motion for disability insurance benefits and supplemental security income is DENIED.

Entered this 28th day of August, 2020.

BY THE COURT:

/s/

_____

BARBARA B. CRABB
District Judges

11